FILED

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

BD
JUN -7 AM 11: 57

### for the

### Middle District of Florida

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

_Jacksonville_ Division

|  |  |  |
|---|---|---|
| BRANDEN J. BAILEY | ) | Case No. |
| | ) | 3:18-cv-739-J-31MCR |
| **Plaintiff(s)** | ) | _(to be filled in by the Clerk's Office)_ |
| _(Write the full name of each plaintiff who is filing this complaint._ | ) | |
| _If the names of all the plaintiffs cannot fit in the space above,_ | ) | |
| _please write "see attached" in the space and attach an additional_ | ) | |
| _page with the full list of names.)_ | ) | |
| -v- | ) | Also See Typed Complaint |
| SEE ATTACHED | ) | |
| | ) | |
| | ) | |
| **Defendant(s)** on next page | ) | |
| _(Write the full name of each defendant who is being sued. If the_ | ) | |
| _names of all the defendants cannot fit in the space above, please_ | ) | |
| _write "see attached" in the space and attach an additional page_ | ) | |
| _with the full list of names. Do not include addresses here.)_ | ) | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

# ATTACHMENT

## DEFENDANTS NAMES

Defendant one (1), Mike Williams.

Defendant two (2), T.Morris

Defendant three (3), Pratt

Defendant four (4), Dennis C. Degele

Defendant five (5), Stanford

Defendant six (6), Isoa

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# I.  The Parties to This Complaint

## A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name: *Branden J. Bailey*

All other names by which you have been known:

ID Number: *7016017065*

Current Institution: *J.E. Goode Pre-trial detention Facility*

Address: *500 E. Adams st.*
*Jacksonville    FL    32202*
      City      State      Zip Code

## B.  The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title (*if known*) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name: *Mike Williams*

Job or Title (*if known*): *head of the Jacksonville sheriffs office(JSO)*

Shield Number:

Employer: *City of Jacksonville*

Address: *501 E. Bay St.*
*Jacksonville    FL    32202*
      City      State      Zip Code

[ ] Individual capacity   [X] Official capacity

Defendant No. 2

Name: *T. Morris*

Job or Title (*if known*): *Director of DOC Jacksonville sheriff's office*

Shield Number:

Employer: *Jacksonville sheriff's office*

Address: *500 E. Adams St*
*Jacksonville    FL    32202*
      City      State      Zip Code

[X] Individual capacity   [X] Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**Defendant No. 3**

Name — _Pratt_

Job or Title *(if known)* — _Chief_

Shield Number

Employer — _Jacksonville Sheriff's office_

Address — _500 E. Adams st._

_Jacksonville_ _FL_ _32202_
City — State — Zip Code

☐ Individual capacity   ☒ Official capacity

*See Attachment 1*

**Defendant No. 4**

Name — _Dennis C. Degele_

Job or Title *(if known)* — _Chaplain_

Shield Number

Employer — _Jacksonville Sheriff's office_

Address — _500 E. Adams St._

_Jacksonville_ _FL_ _32202_
City — State — Zip Code

☐ Individual capacity   ☒ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),* you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

_1st Amendment, RLUIPA, and Article 1 §3 Fla. Const._

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

<u>Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)</u>

  D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

*All defendants are employed by Jacksonville Sheriff's chapter 25-44 Office (JSO). JSO operates under chapters 900-999 & Florida statutes & therefore each defendant was acting under state law.*

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [x] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [ ] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [ ] Other *(explain)*

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

  A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

  B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

*In the Jail, I have wrote request & Grievance to all of the defendant's*

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.   What date and approximate time did the events giving rise to your claim(s) occur?

On June 29th 2016, Since I've been detained

D.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

The defendant's are not allowing me to possess Kufi's (head cover), Sajada (Prayer rug) no muslim services, don't have Qurans, making sentenced muslims cut their beards & some muslims are not giving Halal/Kosher meals. Other officers detainees and Muslims have seen what is going on the defendant have a unconstitutional policy
See attached written complaint

## V.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Emotional Stress, I can't practice my faith

## VI.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

1. a declaration that the acts/omissions described in the complaint violated the Plaintiff's rights under the Constitution & laws of the U.S & Fla. Consts.
2. Temporary Restraining order or Preliminary Injunctions Permanent Injunction ordering Defendants to permit Plaintiff & other muslims to possess religious items ect.
3. compensatory damages $20,000.00 against each defendant, jointly and severally
4. Punitive damages $5,000.00 against each defendant
5. Plaintiff's cost in this suit - including reasonable compensation for time/effort
6. Any additional relief this court deems just, proper & equitable
The basic of these claims is that the defendant did violate the Plaintiff & other muslims Rights

## VII.   Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Jacksonville Sheriff's office
J.E. Goode Pre-trial detention facility

B.   Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.   Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☑ No

☐ Do not know

If yes, which claim(s)?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.   If you did file a grievance:

1.   Where did you file the grievance?

in the Jail

2.   What did you claim in your grievance?

The 1st Amendment was being violated
That they was violation my religious rights

3.   What was the result, if any?

They have a Policy

4.   What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not.  *(Describe all efforts to appeal to the highest level of the grievance process.)*

I did appeal they with not respond back. The
Process is completed

F.   If you did not file a grievance:

    1.   If there are any reasons why you did not file a grievance, state them here:

    2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

[They recently put electronic devices in the Jail & it is Saved on them, that's when they first responded back

The defendants did not respond to my paper Grievance

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☐ No

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

    Plaintiff(s)  _____

    Defendant(s)  _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

    _____

3.  Docket or index number

    _____

4.  Name of Judge assigned to your case

    _____

5.  Approximate date of filing lawsuit

    _____

6.  Is the case still pending?

    ☐ Yes

    ☐ No

    If no, give the approximate date of disposition.  _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    _____

C.  Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
       Plaintiff(s)    _____
       Defendant(s)    _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

       _____

       _____

3.    Docket or index number

       _____

4.    Name of Judge assigned to your case

       _____

5.    Approximate date of filing lawsuit

       _____

6.    Is the case still pending?

       ☐ Yes

       ☐ No

       If no, give the approximate date of disposition    _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

       _____

       _____

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   June 6th, 2018

Signature of Plaintiff

Printed Name of Plaintiff   Branden J. Bailey

Prison Identification #   2016017065

Prison Address   500 E. Adams St.

Jacksonville          FL          32202
City                          State          Zip Code

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

City          State          Zip Code

Telephone Number

E-mail Address

FILED

# IN THE UNITED STATES DISTRICT COURT JUN -7 AM 11:57

### For the
### Middle District of Florida
### Jacksonville Division



-----------------------------------------x
**BRANDEN J. BAILEY**
    *Plaintiff,*

  -v-

**MIKE WILLIAMS et al,**
    *Defendants.*

-----------------------------------------x

: Civil Complaint No.: **3:18-cv-739-J-34MCR**
:
:
: **COMPLAINT FOR VIOLATION OF**
: **CIVIL RIGHTS**
:
:
:
:
:
:

## I. JURISDICTION & VENUE

1.    This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under the color of state law, of rights secured by the Constitution of the United States of America. This court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). The Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283, 2284, and Rule 65 of the Federal Rules of Civil Procedure.

2.    The Middle District of Florida, Jacksonville Division is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

1

## II. PLAINTIFF

3.     The Plaintiff, Branden J. Bailey (Bailey) is a citizen of Jacksonville, Florida, County of Duval and is currently awaiting trial incarcerated and housed at the Pretrial Detention *Facility (PDF) located at 500 East Adams Street, Jacksonville, Florida 32202, in the* custody of the Jacksonville Sheriff's Office Department of Corrections. Bailey has been detained at the P.D.F since June 29th, 2016.

## III. DEFENDANTS

4.     The Jacksonville Sheriff's Office Department of Corrections, is a political subdivision, and municipality in the State of Florida, which incarcerates, detains, and provides rehabilitation for the State of Florida, City of Jacksonville, to persons suspected of and having broken the laws of the State of Florida.

5.     Defendant one (1), Mike Williams is the Sheriff of Jacksonville, and is the head of the Jacksonville Sheriff's Office. Consequently, he is legally responsible for the overall operation of the Sheriff's Office, including the Sheriff's Office Department of Corrections, and as such the PDF.

6.     Defendant two (2), T.Morris is a Correctional Officer of the Jacksonville Sherriff's Office Department of Corrections who, at all times mentioned in this complaint, held the rank of the director, and was assigned to the PDF.

7.     Defendant three (3), Pratt is a Correctional Officer of the Jacksonville Sherriff's Office Department of Corrections who, at all times mentioned in this complaint, held the rank of the chief, and was assigned to the PDF.

8.     Defendant four (4), Dennis C. Degele is the Chaplain of the Jacksonville Sheriff's Office Department of Corrections who, at all times mentioned in this complaint, held the position of Chaplin, and was assigned to the PDF.

9.     Defendant five (5), Stanford is a Correctional Officer of the Jacksonville Sherriff's Office Department of Corrections who, at all times mentioned in this complaint, held the rank of the officer, and was assigned to the PDF.

10.    Defendant six (6), Isoa is a Correctional Officer of the Jacksonville Sherriff's Office Department of Corrections who, at all times mentioned in this complaint, held the rank of the sergeant, and was assigned to the PDF.

2

11.    Each Defendant is sued individually and in his official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.

## IV. STATEMENT OF THE FACTS

12. The Planitiff "Bailey" and the other muslim detainees have a Right to practice their religion —Islam—under the protection of the First Amendment of the U.S. Constitution, and Article I, Section 3 of the Florida Constitution, and several Federal Statutes.  Moreover, the Plaintiff's right to practice his religion is protected by the Religious Land Use and Institutionalized Persons Act 2000("RLUIPA".  Additionally, the Plaintiff is protected against discrimination under the Fourteenth Amendment to the U.S Constitution.

13.    With respect to the reasonable restriction of the "Free Exercise" of the Plaintiff's religion, within the P.D.F, under the "Turner Standard". See Turner v. Safley, 482 U.S. 78 (1987), there does not exist a reasonable or rational cause to deprive the Plaintiff or any other muslim detainee the right to freely practice their religion. Insofar as allowing them to acquire and possess, within the P.D.F, a head covering ("Koofi"), prayer rug(":Sajada"), 3 pairs of boxer shorts, maintain their beards at a certain length[1], or participate in Friday Prayer Service ("Jumah") and fast during the month of Ramadan being provided with a decent (halal) meal[2].

14.    Allowing the Plaintiff to possess both the above-mentioned items or maintain the religious requirements in regards to their faith,does not pose a risk to safely and security or cause a financial burden on the J.S.O.  Equally, allowing the free exercise of the Plaintiff's religion would not affect the other inmates or corrections staff.  With respect to corrections staff and security and safety of other detainees at the P.D.F are able, if convicted, to procure through the commissary several items of clothing, such as :

      a. Items 1504 to 1509, "Andrew Scott-Shirt- Crew neck"

      b. Items 1529 to 1533, "Andrew Scott-Boxer"

      c. Items 1550 to 1556, "Indera Mills- Shirt-Thermal- Natural"

---

[1] All county sentenced male detainees are forced to shave their beards or be disciplined.

[2] The plaintiff was switch to kosher/halal meals as requested, however during the month of Ramadan muslims are required to fast. The Plaintiff requested to be placed of the Ramadan list but the defendant Chaplain failed to do so which resulted to the Plaintiff meals being cold.

> d. Items 8877 to 8950, "Sleep Shirt- No Pocket"

15.     If possessing items over and above the uniform given posed a risk to security or safety why do the Defendants allow items to be purchased on the commissary, which are not J.S.O issued?

16.     Recently the Defendants allowed the purchase, via the commissary, of a doo rag[3](wave cap). The doo rag was withdrawn on the 11th of August 2017, when the violation of us Muslims here at the P.D.F inquired about why we weren't allowed to possess and wear Koofi's. The doo rags were being sold in the P.D.F for well over a year. Therefore, the request by the Plaintiff to possess a koofi is not outrageous and does not possess any risk to security or safety within the P.D.F. In fact, the J.S.O.D.O.C is unique in its policy to not allow Koofi's or Sajada's in its correctional facilities. The unconstitutional violation against the Islamic Religion at the PDF is outrageous—erroneous.

17.     Inmates within the Florida's Department of Corrections (FLDOC), even in the highest level of custody, are allowed to possess and use Koofi's and sajada's to practice their religion. Moreover, the surrounding counties sheriff's jail allow the use of Koofi's and sajada's. With respect to religion services and diet both Jumah Service and a halal diet is an offer to Muslim detainees as a matter of course.

18.     Clearly, the defendant's policy of denying religious head wear, religious prayer mats, access to Jumah Friday Service, and a hot hala die during the month of Ramadan is in violation of the First Amendment of the U.S. Constitution and the RLUIPA 2000.

19.     The violation of the Plaintiff's religious, Free Exercise, rights by the defendants does not stop there. The policy of the defendants in only providing the Plaintiff with a single pair of clothing for, on occasions, six days is against the principle of cleanliness in Islam *"Taharâh"*.

20.     Prior to the obligatory prayer, the Muslim must be clean, and his clothes must also be clean. The Quran states:

**"Truly Allah loves those who turn to him and those who are for cleanliness".**

*Cleanliness of mind, of body, and of clothes is called Taharâh or purification that a Muslim may perform the Salah (prayer).*

---

[3] A doo rag is a black head covering used in order to create waves in the hair. It is routinely worn by African Americans as a style and as a hair treatment product.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

21.     The Defendants are not immune from this complaint because their conduct was unreasonable, outrageous, and exceeds the bounds tolerated by decent society, and was done willfully, maliciously and deliberately, or with reckless indifference, to the plaintiff and other muslim detainees which was a violation of their RIGHTS.

22.     The defendants make all county sentenced male detainees shave their beards off which goes against their Islamic beliefs. This grooming policy violates the RLUIPA and inmates that violate the grooming policy are subject to disciplinary action.

23.     The defendant's has imposed a substantial burden on the religious exercise of the plaintiff, males and females, detained at the PDF with their policies.

## A. FIRST CAUSE OF ACTION: VIOLATION OF THE 1ST AMENDMENT OF THE US CONSTITUTION

24.     The First Amendment to the United States Constitution provides protection to citizens regarding their right to practice their religion. This constitutional right extends to prisoners and detainees, and requires those in charge of State and Federal facilities to ensure those rights to those in their charge. The First Amendment states:

> **United States Constitution, Amendment I**
> "*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof*; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

25.     Plaintiff submits that in order to establish a violation of the right of free exercise of religion Plaintiff must demonstrate that the prison system burdened the practice of his or her religion by preventing the inmate from engaging in conduct required by his or her faith, and made its decision to burden the practice without a justification that is reasonably related to legitimate penological interests. Austin v. Crosby, App. 5 Dist., 866 So.2d 742 (2004).

26.     In determining the validity of a prison regulation that impinges on inmates' constitutional rights, courts must consider: whether there is a valid, rational connection between prison regulation and legitimate governmental interest put forward to justify the regulation, whether there are alternative means of exercising rights that remain open to inmates, whether accommodation of asserted rights will have a significant ripple effect on fellow inmates or prison

staff, and whether there is a ready alternative to regulation that fully accommodates prisoners' rights at *de minimis* cost to valid penological interest. *Austin Id.*

27.     The Jacksonville Sheriff's Office Department of Corrections policy prohibiting detainees from exercising the Islamic Religion, *i.e.*, possessing religious head covers, prayer rugs, providing Qurans, Jumah service, maintaining their beards at a certain length (sentenced detainees), and providing hot kosher meals in general especially during the month of Ramadan, does not pose a rational connection between the policy and a legitimate governmental interest, especially when the commissary sold non-religious headdress in the form of a doo rag, which is used for hair grooming, and allowing the Christians to practice their faith in providing them with bibles/religious services.

## B. SECOND CAUSE OF ACTION: VIOLATION OF ARTICLE 1 § 3 OF THE FLORIDA CONSTITUTION

28.     Article 1 subsection 3 of the Florida Constitution provides analogus protection to the 1st amendment to the United States Constitution, and states:

> **Florida Constitution Article 1 § 3**
>
> **§ 3. Religious freedom**
>
> There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof.   Religious freedom shall not justify practices inconsistent with public morals, peace or safety.   No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.

29.     Plaintiff submits that neither the establishment clause of the first amendment to the United States Constitution or Article 1 § 3 of the Florida Constitution prohibits the maintenance of religious facilities within the confines of the county jail or the compensation from public funds of a chaplain to minister to the religious needs of the inmates; provided that such facilities and clergy are made available to all inmates regardless of religious belief, and that no one religion is given preference over another.   Florida Op.Atty.Gen., 077-55, June 17, 1977 (1977 WL 26568).

30.    The practice in the Pretrial Detention Facility is that all other religions are disparaged with the exception of Christian services. Defendants do not provide any religious services or material for any other religion except Christianity. In fact Muslim detainees are instructed to write to AMANA for a Quran, whilst Bibles are routinely distributed.

## C. THIRD CAUSE OF ACTION: VIOLATION OF SECTION 3 OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT ("RLUIPA") OF 2000

31.    Section 3 of RLUIPA, which concerns institutionalized persons, states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

32.    42 U.S.C. § 2000cc-1(a).   RLUIPA, which provides a private cause of action, id. § 2000cc-2(a), implements a burden-shifting framework, Chance v. Tex. Dep't of Criminal Justice, 730 F.3d 404, 410 (5th Cir.2013).  The Plaintiff's initial burden is two-fold: he must show that:

(1) the relevant religious exercise is "grounded in a sincerely held religious belief"; and

(2) the government's action or policy "substantially burden[s] that exercise" by, for example, forcing the plaintiff "to 'engage in conduct that seriously violates [his or her] religious beliefs.' " Holt, 135 S. Ct at 862 (quoting Burwell v. Hobby Lobby Stores, Inc., --- U.S. ----, 134 S.Ct. 2751, 2775, 189 L.Ed.2d 675 (2014)).

33.    If the plaintiff carries this burden, the government bears the burden of proof to show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a); Holt, 135 S.Ct. at 863.

34.    In the present case the Jacksonville Sheriff's Office Department of Corrections restriction on detainees possessing the muslim headdress (Koofi) and prayer rug (sajada) is not in furtherance of a compelling governmental interest and is not the least restrictive means of furthering that interest.

35.    For instance, the Florida Administrative Code, Rule 33-503.001 states:

### WEST'S FLORIDA ADMINISTRATIVE CODE

7

**TITLE 33. DEPARTMENT OF CORRECTIONS**
**CHAPTER 33-503. CHAPLAINCY SERVICES**
33-503.001. Chaplaincy Services.
(1) Organization and Functions.
(a) The Chaplaincy Services Section is responsible for:
1. Developing and evaluating religious programs throughout the Department,
2. Coordinating all religious activities within the Department,
3. Providing general assistance and guidance to chaplains, and
4. Representing the Department, with the approval of the Secretary, on all religious matters.
[...]
(c) The chaplain of each institution is directly responsible to the area chaplaincy services specialist and coordinates activities with the institution's security staff. The chaplain plans, coordinates, and supervises all religious activities and services at the institution and is responsible for the moral and spiritual well-being of all inmates, including the non-religious.
(2) Policy.
(a) It is the policy of the Department to extend to all inmates the greatest amount of freedom and opportunity for pursuing individual religious beliefs and practices consistent with the security and good order of the institution.
[...]
(c) There shall be no discrimination for or against an inmate based on his religious beliefs or practices, but:
1. An inmate's religious practices may be relevant to an assessment of his adjustment and progress toward rehabilitation; and,
2. Religious beliefs do not justify violation of Department or institutional rules and regulations.
(3) Religious Services and Rituals.
(a) All religious services, rituals, or activities at the institution shall be conducted or supervised by the chaplain or other employee or regular service volunteer.
[...]
(g) Inmates in the general population may transport the following items for individual worship, as defined in Rule 33-602.201, F.A.C., from their assigned cells or individual sleeping areas to the institutional chapel or other designated program area for the purpose of participating in a scheduled religious program, service, or activity for which the item is necessary or appropriate, as determined by the chaplain:

    1. Jewish -- prayer shawl,
    2. **Muslim -- prayer rug,**
    3. Asatru or Odinism -- runes and accompanying cloth bag.

4. Greek Orthodox -- prayer rope,
5. Buddhist -- black or brown Rakusu.

36.     Moreover, with respect to property inmates in the Florida Department of Corrections may possess the Florida Rules of Judicial Administration, Rule 33-602.201 states:

**WEST'S FLORIDA ADMINISTRATIVE CODE**
**TITLE 33. DEPARTMENT OF CORRECTIONS**
**CHAPTER 33-602. SECURITY OPERATIONS**
33-602.201. Inmate Property.
[...]

(16) Religious Property.

(a) Definitions.
1. Religious property - property adhering to the tenets of a particular religion, including items for wearing or carrying at all times, items for individual worship in the inmate's cell or individual sleeping area in open dormitory style housing, and items for storage and supervised use at the institutional chapel.
2. **Koofi - short, brimless cap worn by male followers of Islam.**
3. Prayer rope - short, knotted rope used for individual worship by followers of the Greek Orthodox faith.
4. **Prayer rug - small rug on which followers of Islam conduct individual worship.**
5. Prayer shawl - shawl with tassels or twisted threads on each corner worn by followers of Judaism, Messianic Judaism, and the Assembly of Yashua for Morning Prayer and on holy days; it may be accompanied by a small cloth prayer shawl bag that is used for storing the item when it is not being worn.
6. Rakusu - small, bib-like garment worn about the neck by followers of Buddhism.
7. Runes - small tiles, each inscribed with a runic letter, used for individual worship by followers of Odinism or Asatruism.
8. Scapular - two small squares, sometimes bearing religious images or texts, connected by string and worn about the shoulders of followers of Catholicism.
9. Tarot cards - deck of 78 cards depicting spiritual entities used for individual worship.
10. Tefillin - two small leather boxes, each containing a black leather strap inscribed with religious text. The tefillin are wrapped around the body by followers of Judaism as a form of individual worship and may be accompanied by a small cloth tefillin bag that is used for storing the items when they are not being worn.
11. Tzitzit - four-cornered garment with tassels or twisted threads on each corner worn by followers of Judaism, Messianic Judaism,

9

and the Assembly of Yashua. When the tzitzit is worn underneath
the clothing, the tassels are to hang below the outer garment.
12. **Yarmulke (or Kippah) - small, round cap worn by male
followers of Judaism, Messianic Judaism, and the Assembly of
Yashua.**
13. Zafu - a meditation cushion used by followers of Buddhism.

37.     The Florida Department of Corrections functions under the Administrative Code, and
does not have an increased burden in allowing, convicted, prisoners to possess the religious items
requested by the Plaintiff, who, in fact, is not a convicted prisoner. For the Jacksonville Sheriff's
Office Department of Corrections to cry, "There's a compelling governmental interest in
prohibiting detainees from possessing koofi and prayer mats, and that the restriction in place is
the least restrictive means of furthering that interest" is absurd.

38.     The Florida Department of Corrections holds prisoners convicted of crimes in the State of
Florida, and has a population of more than 120,000 prisoners. On average an individual prison
within the Florida Department of Corrections would hold in the range of 2000 prisoners. The
Pretrial Detention Facility where the Plaintiff is detained holds on average 2000 prisoners.
Therefore, there is no greater risk for the Jacksonville Sheriff's Office Department of Corrections
as there is for the Florida Department of Corrections – in fact, the opposite would be true.

39.     The Defendants violated the Plaintiff rights afforded to him under the RLUIPA by
prohibiting him from possess his koofi and sajada while detained at the PDF in establishing that
their policy did not permit him to have such religious items.  The PDF imposes a substantial
burden on the Plaintiff and other Muslim detainees religious belief.  Muslim males wear their
koofi's and use their sajada's based on the belief as a sunni muslim, they must follow the Islamic
beliefs as expressed in the "hadiths", or sayings on the prophet Muhammad which expresses
respect and deference to Allah.

## D. FOURTH CAUSE OF ACTION: VIOLATION OF THE 14th  AMENDMENTS OF THE U.S. CONSTITUTION

40.     The Fourteenth Amendment to the United States Constitution provides all individuals
"with equal protection under the law." This means that a prison/jail cannot make special rules or
give special benefits to members of only one religion or religious group without a reason.  The
Fourteenth Amendment states:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;  nor shall any State deprive any person of life, liberty, or property, without due process of law;  nor deny to any person within its jurisdiction the equal protection of the laws.

Section 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed.  But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof.  But Congress may by a vote of two-thirds of each House, remove such disability.

Section 4. The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned.  But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave;  but all such debts, obligations and claims shall be held illegal and void.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

41.     Plaintiff submits that the defendants posed a discriminatory effect and intent by providing the Christians with bibles and religious services, *i.e*, the PDF passes out bibles and hold up a sign for Muslims to write a address if they want a Quran, and do not let muslims have Jumah services which is a discrimination.

## E. FIFTH CAUSE OF ACTION: IN RESPECT, BASED ON THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION

42.     Under the 1st Amendment, Plaintiff has a right to "petition the government for a redress of grievances", and under the 5th and 14th Amendments, the Plaintiff has a right to "due process of law."

### Dealing with retaliation

43.     Defendants 5 and 6 have retaliated against the Plaintiff by trying to make him eat or take his food during the month of Ramadan on June 1st, 2018, around 1:20 pm.

44.     On June 1st, 2018, the Plaintiff was placed in administrative segregation by the State Attorney for some unknown reason.

45.     The Plaintiff submits that he can show the three following factors, "protected conduct", "adverse action", and "causal connection", and therefore states:

(1) Plaintiff had a Constitutional right, protected conduct, as part of his 1st Amendment right to file a section 1983 claim and grievance; (2) the defendants forcing the Plaintiff to eat during the month of Ramadan, breaking his fast, and or taking his kosher/halal meals so that he can't eat was a adverse action and any average person would have stopped from continuing with their suit; and (3) the causal connection of the defendants adverse action was directly related to the Plaintiff protected conduct.

46.     In addition, the Plaintiff can prove that there is a custom of retaliating against detainees who exercise their right of access to the courts[4]. Also see Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001).

---

[4] Witnesses names not included in this complaint for their safety reasons.

## F. INJUCTIVE RELIEF: PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

47.     The Plaintiff submits that the facts in the above styled case meet the basic four-factor legal standard, which is the same for a temporary restraining order ("TRO") and a "Preliminary Injunction", and in making this motion the Plaintiff will clear the hurdle of demonstrating that each of the four factors weigh in his favor, that is, the Plaintiff will demonstrate that there is:

    i.    **a substantial likelihood of success on the merits of his case,**

    ii.    **a significant risk of irreparable harm if the injunction is withheld,**

    iii.    **a favorable balance of hardships; and**

    iv.    **a fit, or lack of friction, between the injunction and the public interest.**

**(i) There is a Substantial Likelihood of Success on the Merits of the Plaintiff's Case,**

48.     The Plaintiff is a Sunni Muslim. The religion of Islam is recognized, worldwide, as a valid religious practice with over 1 billion adherents. Therefore, the Plaintiff has a clear legal right under the U.S. and Florida Constitutions. The 1st Amendment to the U.S. Constitution states:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;…"

49.     Article 1 § 3 of the Florida Constitution States:

> "There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof…"

50.     Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") states:

Section 3 of RLUIPA, which concerns institutionalized persons, states:

> "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, … even if

> the burden results from a rule of general applicability, unless the
> government demonstrates that imposition of the burden on that person:
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling
> governmental interest."

51.     Both the U.S. and Florida Constitutions provide a clear legal right to the Plaintiff to freely Practice his religion. Moreover, the RLUIPA of 2000 protects the free practice of religion with respect to institutionalized persons, *i.e.*, prisoners and detainees.

52.     The Plaintiff will rely on the following cases, which were successful in the United States Courts, and are directly *in point* with the Plaintiff's case:

a)  Harris v. Wall 217 F.Supp.3d 541, where the District Court, William E. Smith, Chief Judge, adopted the opinion of Patricia A. Sullivan, United States Magistrate Judge, holding that the basic four-factor legal standards with respect to TRO's and Preliminary Injunctions were met where the Plaintiff ("Harris") was permitted the use of his Koofi whilst in his cell or at religious service, but not permitted elsewhere in the prison, and

b)  Ali v Stephens 822 F.3d 776, where the United States Court of Appeals, Fifth Circuit, Edward C. Prado, Circuit Judge, held that *inter alia* headwear policy was not least restrictive means of serving interest in preventing transfer of contraband; headwear policy was not least restrictive means to serve compelling interest in identification; and headwear policy did not serve compelling interest in cost control. The issue relating to the sajada was not in question as this was readily available to Muslim prisoners at the prison facility.

**(ii) There is a Significant Risk of Irreparable Harm if the Injunction is Withheld**

53.     The Plaintiff has been detained in the PDF since June 29th, 2016, and has been denied the most basic items necessary for the free practice of his religion – the koofi and sajada. This practice or policy is exclusive to the PDF. The Clay County PDF, The St. Johns County PDF, The Hillsborough County PDF, and most likely every other PDF in the State of Florida, and all prisons controlled by the Florida Department of Corrections ("FLDOC") allow the use, ownership, and storage of both the koofi and sajada within their facilities.

54.     On a daily basis the Plaintiff and other Muslim detainees within the PDF are made to feel less than equal to their Christian counterparts. On a daily basis the Plaintiff and other Muslim detainees, within the PDF, are made to feel debased, and lacking in equality with respect to praying and religious observance – Christian services and programs are the religious services provided at the PDF. Until recently, until another Muslim detainee the Plaintiff submitted some 30 requests and 10 grievances, detainees at the PDF were allowed to purchase head coverings – for the purpose of hair style and hair dress – on the commissary. This also raised a sense of persecution (why can they and why can't we) in the Plaintiff.

55.     Clearly this discriminatory practice is violation of the Plaintiff's U.S. and Florida Constitutional rights, has caused, and continues to cause harm to the Plaintiff and the Muslim population as a whole detained at the PDF.

**(iii) There is a Favorable Balance of Hardships**

56.     The Plaintiff relies upon precedent from the U.S. Court of Appeals, 5th Circuit in the Case of Ali v. Stephens (May 2, 2016), wherein it was decided that the Texas Department of Criminal Justice's ("TDCJ") prison policies that prohibited the wearing of religious head wear, specifically a koofi, throughout the prison facility was contrary to law – i.e. 1st Amendment to the U.S. Constitution and the RLUIPA of 2000 (Ali v. Stephens, 822 F.3d 776 (C.A.5(Tex.)2016)).

57.     In *Ali v. Stephens* the Plaintiff, for injunctive relief, was allowed a prayer mat (sajada); however, he was not permitted to wear or possess a koofi or to grow a beard. He petitioned for injunctive relief citing the 1st Amendment and Section 3 of the RLUIPA of 2000. The Court after considering:

    a) **The "Compelling Interest Test,**
    b) **The "Least Restrictive Means" Test,**
       i. **Preventing Contraband,**
      ii. **Inmate Identification, and**
     iii. **Cost Control and Prison Operations,**

Refused the TDCJ's submissions, and affirmed the District Courts Judgment and permanent injunction, finding that there was no lawful reason to prohibit *Ali* from wearing a koofi – the issue of sajada was not pertinent as they were already allowed within TDCJ facilities.

58.     The Plaintiff submits that , with respect to the wearing of a koofi, and use of a sajada, that his petition is analogous (*in point*) with *Ali v. Stephens*. There is no, lawful, reason why the practice or policy of the PDF – in prohibiting the use and retention by detainees of sajada or koofi – should be at odds with other PDF's in the state of Florida or the FDOC. Especially, when items of clothing are purchasable on the commissary (i.e. boxer shorts, thermals, shirts, shoes, sandals, and glasses).

59.     Moreover, the commissary within the PDF routinely sold head covering for the purpose of head dress (a doo rag). This item was withdrawn from the list of allowable possessions – after the Muslim detainee complained, and said he was filing his 42 U.S.C §1983 suit against the Defendants – on the 11th of August 2017. The reason for the withdrawal was attributed to gang activity. However, the very small Muslim population within the PDF requesting koofi or sajada should cause no considerable hardship on the Defendants considering that they may receive Federal funding with respect to the provision of such items, but fail to do so.

60.     In any event those items, the sajada or koofi could be purchased on the commissary by detainees who have funds, or these religious items can be donated, mailed and or brought to the facility by family or the imam, thereby, further reducing any burden on the Defendants. Moreover, the Islamic Center of North East Florida, 2333 St. Johns Bluff Rd., Jacksonville, FL 32246 has stated that they would provide these items and various other books and sundries to the Defendants for issuance to Muslim detainees free of charge.

61.     Therefore, there is no material hardship on the Defendants with respect to the cost of these items. With respect to the provision of non-inmate issue attire the Defendants routinely sell: *inter alia* boxer shorts, t-shirts, thermal bottoms, thermal tops, shower shoes, trainers and glasses. Consequently, any particular burden with respect to searching for contraband, which could be concealed in a koofi or sajada are, equally, non-existent[5].

**(iv) There is a fit, or lack of friction, between the injunction and the public interest.**

62.     The Plaintiff submits that it is clearly in the public interest that Muslim detainees are afforded the opportunity to "freely" practice their religion within the PDF as they do in various

---

[5] When conducting searches of cells within the PDF Officers are aware that the non-facility issued clothing is available on the commissay. A simple memo to all correctional staff explaining that sajada and koofi are available to Muslim detainees is the only burden necessary to bring koofi and sajada in line with other non-facility issued items.

Department of Corrections within the State of Florida, and throughout the Florida Department Of Corrections (FLDOC). Moreover, there can be no sense of friction between Muslim detainees freely practicing their religion and the Christian population freely practicing their religion within the PDF. To suggest such would be clearly discriminatory and in violation of the 14th Amendment, Section 1 to the United States Constitution, "... *nor deny to any person within its jurisdiction the equal protection of the laws.*"

63.     Considering there can be no cost burden on the Defendants with respect to the provision of koofi and sajada to the, infinitesimal, Muslim detainee population at the PDF[6] there can be no friction with respect to cost. With respect to security and safety, presently, Muslim detainees pray on their bed sheets or their towels. Substituting a sajada ("prayer mat") for a bed sheet or a towel would pose no significant risk – as no risk exists presently the practice seems purely discriminatory.

64.     Put simply, the Plaintiff submits that there is "clear" fit, or lack of friction, between the injunction and the public interest being served so that the discriminatory practice of denying Muslim detainees at the PDF their koofi or sajada is ceased forthwith.

65.     The Plaintiff prays that this honorable Court   issue a Temporary Restraining Order ordering the Defendants to cease their blanket policy of denying the Plaintiff and all Muslim detainees the ability to practice, freely, their religion, and allow them to possess, and use koofi and sajada – as a minimum, wear the koofi, within their cells or in the alternative wear the koofi throughout the PDF and keep the sajada within their dorms.

66.     In his humble request the Plaintiff submits that the current practice or policy of the PDF with respect to religious headwear and prayer mats is clearly in violation of the 1st  and 14th Amendments to the U.S. Constitution, Article 1§3 of the Florida Constitution, and the RLUIPA of 2000 § 3(a).

## V. EXHAUSTION OF LEGAL REMEDIES

67.     The Plaintiff, Branden Bailey, used the jail grievance procedure available at the PDF in an attempt to remedy the violations of his Constitutional and Federal legal rights. The Plaintiff has filed some 20 to 40 grievances with respect to various short comings within the PDF, with

---

[6] There are most likely less than 50 detainees in the PDF, which has a population of over 2300 detainees. This is less than 2% of the total population.

respect to his Constitutional and Federal legal rights; however, the Plaintiff has not received a single written response to his grievances.

68.     Finally, in the month of May 2018, the PDF provided tablet computers for the detainees in Dorm 5E3 and throughout the facility. The Tablet facility allows detainees to send requests and grievances, which are electronically logged and recorded. Consequently, the all requests and grievances are now subject to monitoring by the PDF, gettingout.com or tellink.com who provides the service.

69.     On May 22nd, 2018 at 8:25, Plaintiff submitted a grievance via the tablet computer. Defendant, (name unknown) responded to Plaintiff's grievance. On May 22nd, 2018 at 9:07, his response was to the effect that the policy of the JSODOC did not allow him to possess a koofi or prayer mat.

70.     On May 22nd, 2018 at 18:23 the Plaintiff submitted an appeal to the grievance via the tablet computer. During that week the prospective chaplain, Ms. (name unknown) attended upon the Plaintiff requesting that the Plaintiff refrain from filing this 1983 claim. However, Plaintiff had been suffering discrimination and a violation of his rights under the 1st Amendment, RLUIPA, and Article 1 § 3 of the Florida Constitution for several years.

71.     Consequently, this 1983 action is necessary.

## VI. LEGAL CLAIMS

72.     The deliberate denial of the Plaintiff, by the Defendants of access and use of a prayer mat ("Sajada") and head covering ("Koofi") for performing his five daily prayers, violated the Plaintiff's rights and constituted a violation of the "free exercise" of his religion under the 1st and 14th Amendments to the United States Constitution, Section 3 of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, and Article 1 § 3 of the Florida Constitution.

73.     The Plaintiff has no plain, adequate or complete remedy at law to seek redress for the wrongs he has suffered as described herein. The plaintiff has been and will continue to be irreparably injured by the Defendant's conduct, unless this court grants the declaratory and injunctive relief, which the plaintiff so craves.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court enter judgment granting the Plaintiff:

74.    A declaration that the acts and omissions described herein violated the Plaintiff's rights under the Constitution and Laws of the United States, and the Constitution and Laws of the State of Florida.

75.    A Temporary Restraining Order ("TRO") or Preliminary Injunction and Permanent Injunction ordering the Defendants to permit the Plaintiff to own, possess, and wear his religious head wear – koofi – in his cell, dayroom, and throughout the PDF or other detention facility owned or operated by the Defendant, Mike Williams; and to permit the Plaintiff to own, possess, and use his prayer mat – sajada – in his cell or multi-purpose area in the dormitory or like areas in the PDF or other detention facility owned or operated by the Defendant, Mike Williams.

76.    Compensatory damages in the amount of $20,000.00 against each Defendant, jointly and severally.

77.    Punitive damages in the amount of $5,000.00 against each Defendant.

78.    A Demand For Jury Trial on all issues triable by jury.

79.    Plaintiff's costs in this suit – including reasonable compensation for time and effort.

80.    Any additional relief this Court deems just, proper and equitable.

Respectfully submitted,

/s/ _Branden J. Bailey_

Branden J. Bailey
#2016017065
Duval Pretrial Detention Facility
500 East Adams Street
Jacksonville, FL 32202

## VIII. VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true.

I further understand that under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rules of Civil Procedure 11.

Finally, I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of Signing: June 6th, 2018

/s/ Branden J. Bailey
Branden J. Bailey
#2016017065
Duval Pretrial Detention Facility
500 East Adams Street
Jacksonville, FL 32202